## THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA
## CIVIL DIVISION

**ADAM FOUNTAIN,**

     **Plaintiff,**

**v.**                                   **CASE NO.:**

**ONSITE EMPLOYEE LEASING, INC.**
**d/b/a ONSITE BUSINESS SERVICES, INC.,**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Adam Fountain, by and through undersigned counsel, files this Complaint and Demand for Jury Trial against Defendant, ONSITE EMPLOYEE LEASING, INC. d/b/a ONSITE BUSINESS SERVICES, INC. ("Defendant" or "Onsite")), and in support of his claims states as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action for damages in excess of $50,000, exclusive of interest, fees, and costs, and for declaratory relief against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x.

2.      The FCRA, 15 U.S.C. §1681b, makes it unlawful to obtain and use a "consumer report" for an employment purpose. Such use becomes lawful if and only if the "user" – in this case "Defendant"– has complied with the statute's strict disclosure and authorization requirements. 15 U.S.C. §1681b(b)(2).  Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class member.

**EXHIBIT 1**

3.      More specifically, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other Putative Class members for employment purposes without following the law. Under this subsection of the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes.

4.      This disclosure must be made by employers prior to obtaining copies of employees', or prospective employees', consumers reports. *Id.*   A "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for an employment purpose.

5.      Defendant willfully violated 15 U.S.C. § 1681b(b)(2) by failing to provide Plaintiff and other Putative Class members with a copy of a separate document consisting solely of Defendant's disclosure, stating that Defendant may obtain a consumer report on any person for employment purposes.

6.      Defendant also violated this requirement by failing to provide this disclosure to Plaintiff and other Putative Class members ***prior*** to obtaining a copy of the person's consumer report. (Emphasis added).

7.      Further, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports for Plaintiff and other Putative Class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA.

8.      In response to Defendant's willful violations of the FCRA, Plaintiff asserts two

class claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii), on behalf of a "Background Check Class,"

consisting of:

> **All Onsite employees and job applicants in the United States who were the
> subject of a consumer report that was procured by Onsite, within five years of
> the filing of this complaint through the date of final judgment in this action,
> and not first provided a stand-alone disclosure in violation of 15 U.S.C. §
> 1681b(b)(2)(A).**

9.      On behalf of and the Putative Class identified herein, Plaintiff seeks statutory

damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

10.     Plaintiff is a former employee of Defendant and is also a member of the Putative

Class defined below. Plaintiff is a resident of Orlando, Orange County, Florida.

11.     Defendant is headquartered in Delaware, but is authorized to conduct business in

Florida and operates an employee leasing company throughout Florida, including in Seminole

County Florida. Plaintiff was employed, and worked for Defendant in Sanford, (Seminole County),

Florida.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

13.     The Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.  This

Court has personal jurisdiction over Defendant under the Florida Long Arm Jurisdiction Act, Fla

Stat. Section§ 48.193, as Plaintiff applied to work for Defendant in this County, and Defendant

took an adverse employment action against Plaintiff in this County.  Furthermore, this Court's

exercise of personal jurisdiction is constitutionally sound. Through its operations throughout

Florida, including in Hillsborough County, Defendant has established sufficient minimum contacts with the State of Florida.

14.     Venue is proper in Orange County, because all of the events giving rise to these claims arose in this County. Plaintiff applied to work for Defendant in this County and Defendant denied Plaintiff's employment in this County. Defendant will suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

### ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

#### *Background Checks*

15.     Defendant conducts background checks on the majority of its prospective employees as part of a standard screening process.

16.     Defendant does not perform these background checks in-house. Rather, Defendant relies on various outside consumer reporting firms to obtain this information, and return the corresponding reports to Defendant. These reports are "consumer reports" within the meaning of the FCRA.

#### *FCRA Violations Relating to Background Check Class*

17.     Defendant procured consumer report information on Plaintiff in violation of the FCRA.

18.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)     a ***clear and conspicuous disclosure*** has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure*** that a consumer report may be obtained for employment purposes; and

(ii)   the consumer has authorized the procurement of the consumer report in writing (which authorization may be made on the document referred to in clause (i)).

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added).

19.   Defendant failed to satisfy these unambiguous disclosure and authorization requirements.  This is commonly referred to as the "stand alone disclosure" requirement.

20.   Simply put, Defendant does not have a stand-alone FCRA disclosure form that clearly and conspicuously states that a consumer report may be procured on prospective or current employees for employment purposes.

21.   The FCRA also contains several other notice provisions, such as 15 U.S.C. §1681b(b)(3)(a) (pre-adverse action); §1681b(4)(B)(notice of national security investigation); §1681c(h) (notification of address discrepancy); §1681g (full file disclosure to consumers); §1681k(a)(1) (disclosure regarding use of public record information); §1681h (form and conditions of disclosure; and §1681m(a) (notice of adverse action).

22.   The purpose of FCRA notice provisions, including 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared. This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness.

23.   Defendant's disclosure form violates the plain language of the FCRA, and also flies in the face of unambiguous case law and regulatory guidance from the FTC.

24.   Defendant willfully disregarded this unambiguous case law and regulatory guidance, and it willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on prospective or current employees and failing to comply with the disclosure and authorization requirements of the FCRA.

## **FACTUAL ALLEGATIONS**

25.     Pursuant to the FCRA, Defendant was required to first disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report.

26.     On or about January 2023, Defendant procured a consumer report on Plaintiff by using the services of a third-party vendor that qualifies as a consumer reporting agency.   The consumer report contained private, highly confidential information about Plaintiff.

27.     However, before procuring that report, Defendant violated Plaintiff's rights by providing him with a disclosure form which failed to follow the requirements of the FCRA.

28.     The disclosure document provided to Plaintiff contained extraneous information, the presence of which confused Plaintiff about his rights pursuant to the FCRA and distracted him while he was reading the document.

29.     The disclosure document contained a plethora of extraneous information in flagrant disregard of the FCRA's stand-alone disclosure mandate, including, but not limited to the following:

- An impermissible blanket authorization allowing Defendant to obtain nearly limitless information on Plaintiff and the putative class members from almost every source imaginable;
- An FCRA-violative agreement by which Plaintiff was forced to purportedly allow Defendant's customers with copies of the information and records Defendant obtained in Plaintiff's consumer report without any additional disclosure and/or authorization by Plaintiff, meaning Plaintiff and the putative class members' private information could be shared with anyone whom Defendant wanted to share it with provided they were also a customer;
- Required information mandating applicants disclose in the same document their Social Security Number; and, finally,
- An inaccurate and incomplete disclosure of the applicant's right to gain access to the report from Onsite, which does not comport with 15 U.S.C § 1681b(b)(2) or (3).

30.     While disclosures may also include authorization forms, as explained above, Defendant's FCRA disclosure contains much more.

31.     Plaintiff values his privacy and federally protected rights. If Plaintiff had known the disclosure form that Defendant provided was unlawful or Defendant would not comply with the FCRA, Plaintiff would not have authorized Defendant to procure the consumer report.

32.     Prior to employment, Defendant did not inform Plaintiff of the scope of the background check that Defendant intended to obtain regarding Plaintiff.

33.     Plaintiff worked for approximately two months before a background check was conducted on Plaintiff.

34.     On or about February 17, 2023, Defendant informed Plaintiff, via text message, that Defendant received Plaintiff's background check and Defendant terminated Plaintiff's employment, saying to Plaintiff: "Don't come back."

35.     Plaintiff was not provided an opportunity to verify or dispute any information contained in the consumer report before adverse action was taken against him.

36.     Defendant did not provide a Pre-Adverse Action Notice to Plaintiff. The decision to terminate Plaintiff's employment was made once the Defendant received the negative information about Plaintiff pursuant to the non-compliant Disclosure form.

37.     Even if Defendant did send Plaintiff a timely Pre-Adverse Action notice, Defendant still violated 15 U.S.C. § 1681b(b)(3) because of the way in which its hiring process is set up.

38.     Defendant is an employer with multiple employees and was aware of obligations under the FCRA as they relate to employment.

39.      In Plaintiff's case, Plaintiff's employment was terminated with Defendant because of information in an illegally-procured background check and without Defendant first providing

him with a copy of the report on which that decision was based and an opportunity to dispute or discuss the information with Defendant before Defendant chose to take adverse action against him.

40.     Defendant terminating Plaintiff's employment caused Plaintiff damages in the form of lost pay, and emotional damages due to stress caused by the loss of a job he should certainly should have retained

41.     Defendant's violation was willful.  Defendant willfully violated this requirement by failing to comply with both the plain language of the FCRA, well-established case law, and the unambiguous regulatory guidance provided by the FTC.

42.     In fact, Defendant was required to first certify that it would comply with the requirements of the FCRA. To ensure knowing compliance with the FCRA, Congress requires that the employer must first certify to the consumer reporting agency that the employer shall comply with the disclosure, authorization, and if applicable, the adverse action requirements pursuant to 15 U.S.C. § 1681b(b)(1)(A). The consumer reporting agency may not procure a consumer report before this certification has been executed by the employer.

43.     Upon information and belief, and provided it complied with the law, Defendant knowingly executed a certification providing that it would comply with the disclosure and authorization provisions provided by the FCRA.

44.     Despite its certification, Defendant knowingly violated the FCRA by failing to comply with the Disclosure and Authorization requirements.

45.     Further, Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau.

Defendant obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

46.    Defendant knowingly violated 15 U.S.C. § 1681b(b)(2)(A)(i-ii) by failing to provide Plaintiff and the Putative Class with a copy of a document consisting solely of a disclosure stating that Defendant may obtain a consumer report on Plaintiff and the Putative Class for employment purposes, prior to obtaining a copy of their consumer reports. As a result, Plaintiff seeks the relief provided for by the FCRA on behalf of himself and the putative class members he seeks to represent, as set forth further below.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff assert claims pursuant to 15 U .S.C. §§ 1681b(b)(2)(A)(i)-(ii) in Counts I and II of this Complaint on behalf of a class defined as:

> **All Onsite employees and job applicants in the United States who were the subject of a consumer report that was procured within five years of the filing of this complaint through the date of final judgment in this action and not first provided a stand-alone disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A).**

48.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and current employees. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by the Defendant, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

49.    **Typicality**: Plaintiff's claims are typical of those of the members of the putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by

other Putative Class members, and Defendant treated Plaintiff in a manner consistent with its treatment of other Putative Class members under its standard policies and practices.

50.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Putative Class. Plaintiff's interests coincide with, and are not antagonistic to, other class members' interests. Plaintiff has retained counsel experienced in complex class action litigation.

51.     **Commonality**: Common questions of law and fact exist as to all members of the Putative Class, and predominate over any questions solely affecting individual members of the Putative Class. These common questions include, but are not limited to:

a.     Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

b.     Whether Defendant's background check practices and/or procedures comply with the FCRA;

c.     Whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

d.     Whether Defendant violated the FCRA by procuring consumer report information based on invalid authorizations;

e.     Whether Defendant's violations of the FCRA were willful;

f.     The proper measure of statutory damages; and

g.     The proper form of injunctive and declaratory relief.

52.     This case is maintainable as a class action under Fla.R.Civ.P. 1.220 because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

53.     This case is also maintainable as a class action under Fla.R.Civ.P. 1.220 because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

54.     Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class members' individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action, brought in a single forum.

55.     Plaintiff intends to send notice to all members of the Putative Class to the extent required by law. The names and addresses of the Putative Class members are readily available from Defendant's records, and are also available from the applicable consumer reporting agency from whom Defendant obtained the consumer reports at issue.

**COUNT I – VIOLATION OF 15 U.S.C. § 1681b(b)(2)(A)(i)**
**Failure to Make Proper Disclosure in Violation of FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

56.     Plaintiff alleges and incorporates by reference the allegations of paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     In violation of the FCRA, the background check that Defendant required the Plaintiff and the Putative Class to complete as a condition of their employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i), because Defendant failed to provide a stand-alone document pertaining to how the consumer report information would be obtained and utilized.

58.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.

59.     The foregoing violations were willful. Defendant knew that it was required to provide a stand-alone form prior to obtaining and then utilizing a consumer report on any of the Background Check Class members. By failing to do so, Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any

reasonable employer would know of, or could easily discover, the FCRA's mandates. Defendant's actions were also willful because:

a. As a national employee leasing company, a large part Defendant's entire business is processing job applications, procuring consumer reports, and placing people in various positions. Thus, Defendant's entire business model depends on being able to legally process and place applicants at various locations, which, by definition, would require Defendant to understand FCRA compliance;

b. Defendant knew of potential FCRA liability as the Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

c. Defendant knew or had reason to know that their conduct was inconsistent with published case law, FTC guidance interpreting the FCRA and the plain language of the statute;

d. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

e. The consumer reporting agency utilized by Defendant made available to information on how to comply with the FCRA;

f. Under 15 U.S.C. § 1681b(b)(1)(A) Defendant was required to first certify that it would comply with the requirements of the FCRA before obtaining any consumer report from a consumer reporting agency. Thus, Defendant knew it was supposed to comply with 15 U.S.C. § 1681b(b)(2)(i).

***Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury***

60.     First, as to the § 1681b(b)(2)(A)(i) claim, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.  The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

61.     Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer reports were to be procured. By depriving Plaintiff of this information, Defendant injured Plaintiff and the putative class members they seek to represent. *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 449 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

62.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment. The required disclosures were not made, causing

Plaintiff an informational injury. *See Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016).

### ***Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy***

63.     Second, as to the § 1681b(b)(2)(A)(i) claim, Defendant invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." Harris v. Home Depot U.S.A., Inc., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). Plaintiff's consumer report contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so (e.g., social Security Numbers, address history, phone numbers, e-mail addresses, and information about any alleged criminal background information, work history, etc.). By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's right to privacy. Perry v. Cable News Network, Inc., No-16-13031, (11th Cir., April 27, 2017)(Violation of statutory right that has a close relationship to a harm traditionally recognized in English or American law is a concrete harm for purposes of Art. III standing).

64.     Third, as to the § 1681b(b)(2)(A)(i) claim, Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants. Without accurate source information as to what to do if the information in their reports was inaccurate, or what

possible state law governed due to the extraneous state law information included in Defendant's disclosure, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.

65.     Furthermore, Plaintiff would not have agreed to provide Defendant with access to her consumer report had he understood that the form did not fully comply with the law.

66.     As detailed above, Spokeo expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any additional harm beyond the one Congress has identified." Id. at 1549–50; see also id. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

67.     Fourth, as to the § 1681b(b)(2)(A)(i) claim, the harm created by Defendant is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information. Insofar as Spokeo directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.  In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134 (3d Cir. 2015).  Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure before their consumer reports are

obtained by prospective employers. Thus, Plaintiff has alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

68.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

69.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

### COUNT II – VIOLATION OF 15 U.S.C. § 1681b(b)(2)(A)(ii)
### Failure to Obtain Proper Authorization in Violation of FCRA
### 15 U.S.C. § 1681b(b)(2)(A)(ii)

70.     Plaintiff alleges and incorporates by reference the allegations of paragraphs 1 through 55 of this Complaint as though fully set forth herein.

71.     Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

72.     The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. "After all, one cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails." Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010); see also United States v. DeFries, 129 F.3d 1293, 1307 (D.C. Cir. 1997) ("[A]uthorization secured 'without disclosure of . . . material information' is a nullity.")

73.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Disclosure and

Authorization class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer would know of, or could easily discover, the FCRA's mandates.   The foregoing actions were also willful because:

     a. As an employee leasing company, a large part Defendant's entire business is processing job applications, procuring consumer reports, and placing people in various positions— thus Defendant's entire business model depends on being able to legally process and place applicants with various customers, which, by definition, would include knowing FCRA compliance.

     b. Defendant knew of potential FCRA liability as the Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

     c. Defendant knew or had reason to know that their conduct was inconsistent with published case law, FTC guidance interpreting the FCRA and the plain language of the statute;

     d. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

     e. The consumer reporting agency utilized by Defendant made available to information on how to comply with the FCRA;

***Plaintiff's Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy***

74.   First, in terms of Plaintiff's claim under § 1681b(b)(2)(A)(ii), the authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.  Thus, by violating §1681b(b)(2)(A)(i) Defendant invaded Plaintiff's right to privacy under § 1681b(b)(2)(A)(ii). Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." Harris v. Home Depot U.S.A., Inc., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

75.   Plaintiff's consumer reports contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. The consumer reports Defendant obtained on Plaintiff and the putative class members included highly sensitive and personal information. By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's rights to privacy.

76.   Second, in terms of Plaintiff's claims under § 1681b(b)(2)(A)(ii),  Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants.  Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data

contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.   Furthermore, Plaintiff would not have agreed to provide Defendant with access to her consumer report had she known Defendant's FCRA forms were non-FCRA compliant.

77.     As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549.   In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any additional harm beyond the one Congress has identified." Id. at 1549–50; see also id. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

78.     Third, in terms of Plaintiff's claim under § 1681b(b)(2)(A)(ii), the harm created by Defendant is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information. Insofar as Spokeo directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.   In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134 (3d Cir. 2015).   Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure before their consumer reports are obtained by prospective employers. Thus, Plaintiff have alleged an

injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

79.    For these reasons, and as stated below, Plaintiff has sufficiently alleged that she suffered a concrete and particularized "injury-in-fact" in connection with his claim for violations of § 1681b(b)(2)(A)(i) and (ii) in accordance with the standards set forth in *Spokeo*.

80.    Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

81.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, on behalf of and the Putative Class, prays for relief as follows:

(a)    Determining that this action may proceed as a class action under Rule 23;

(b)    Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

(c)    Issuing proper notice to the Putative Class at Defendant's expense;

(d)    Declaring that Defendant committed multiple, separate violations of the FCRA;

(e)    Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

(f)    Awarding statutory damages as provided by the FCRA, including punitive damages;

(g)    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

(h)   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Putative Class demand a trial by jury for all issues so triable.

Dated this 5th day of January, 2024.

Respectfully submitted,

*/s/ Amanda E. Heystek*
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: (813) 379-2565
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Email: gdesane@wfclaw.com
**Attorneys for Plaintiff**